THOMPSON, Judge,
dissenting.
I conclude that the evidence clearly supports the trial court’s determination that there were no viable alternatives to terminating the parents’ parental rights and that such a termination would be in the best interests of the children. Therefore, I must dissent.
The children involved in this case were ages 8 and 5 at the time of the termination hearing; at that time, they had been out of their mother’s custody and in foster care for 33 months. The trial court found that the maternal grandmother had kept the children for only the first two months after they were removed from the mother’s custody; that when the maternal grandmother’s then fiancé objected to her having the children, she, without DHR’s permission, gave the children to another couple; and that when that couple divorced the maternal grandmother refused to take the children.
DHR presented evidence indicating that, more than one and a half years after she had given up custody of the children, one of the DHR social workers had attempted to perform a home evaluation on the maternal grandmother’s home. However, before that evaluation could be conducted, the maternal grandmother withdrew her request for custody of the children, stating that her husband was opposed to her obtaining custody of them.
The record also indicates that the mother was out of the maternal grandmother’s custody and in foster care from the time she was 12 years old until she was 18 years old. The maternal grandmother testified that she moved to this state while the mother remained in foster care in Kansas because the mother was almost 18 and could join her in Alabama in less than one year. The maternal grandmother also admitted that she did not have custody of her son during much of his life; she disavowed any responsibility for her son’s drug addiction and other problems because she had not reared him.
The maternal grandmother filed her petition to intervene only after her husband died and only days before the termination hearing. She refused to answer the question whether she would have filed the petition to intervene if her husband had not died.
In V.M. v. State Department of Human Resources, 710 So.2d 915 (Ala.Civ.App.1998), the grandmother had refused to take her grandchildren when they were first placed in foster care in 1993. In 1995, the grandmother expressed an inter *116 est in obtaining custody of the children; the grandmother again contacted the social worker about obtaining custody of the children after DHR had filed a petition to terminate the mother’s parental rights. DHR did not investigate the grandmother’s home because the grandmother had previously refused to take the children. This court reversed, stating that the grandmother had not been “considered in light of her present circumstances [or her] present willingness to be a resource for the children.” V.M. v. State Dep’t of Human Res., 710 So.2d at 921.
In this case, the maternal grandmother had given up the children after caring for them for only two months; had later refused to take them; and had scheduled a home evaluation but then informed the social worker she could not take the children. In the interim, the children remained in foster care for almost three years. During DHR’s investigation and its attempts to reunite the children with a parent, the maternal grandmother refused to take custody of the children. I interpret the “present circumstances” and “present willingness” factors stated in V.M. to refer to the “circumstances” and “willingness” present, existing, and exhibited at the time the DHR social workers are conducting their investigation, offering services, and seeking placement of the children as an alternative to terminating a parent’s parental rights. I cannot conclude that the holding of V.M. v. State Department of Human Resources refers to “circumstances” and “willingness” of the maternal grandmother that arose only at, or mere days before, the termination hearing, especially considering that she had, until the date she filed her petition, refused to take the children.
“In V.M. v. State Dep’t of Human Resources, 710 So.2d 915 (Ala.Civ.App.1998), this court reversed a judgment terminating a mother’s parental rights because, it held, the trial court’s conclusion that there was no viable alternative to the termination was plainly and palpably wrong. In V.M., DHR had rejected a grandmother as a relative resource because it had negative, four-year-old information about the grandmother and because ‘the grandmother had shown a lack of initiative in contacting DHR regarding the necessary paperwork.’ 710 So.2d at 921. This court stated:
“ ‘All of DHR’s objections to the grandmother as a relative resource were based on past history ... and there was no evidence that she had been considered in light of her present circumstances [and] her present willingness to be a resource for the children.... DHR must present “evidence of recent attempts to locate viable alternatives in order to establish that termination of parental rights is the least drastic alternative.” In light of the evidence that the grandmother’s present circumstances had not been investigated, the trial court’s decision to terminate the mother’s parental rights based upon the lack of viable alternatives was plainly and palpably wrong.’
“V.M., 710 So.2d at 921 (emphasis added) (citation omitted). The statements we made in V.M. apply with even greater force in this case. DHR made virtually no effort to investigate the father’s current living conditions, had virtually no information about the father’s current employment circumstances, and made the determination that the father was unreliable because he had neglected to telephone DHR about a home study. As we implied in V.M., and as we now explicitly hold, DHR — not the prospective custodian — has the burden of initiating investigations, and it is DHR’s burden to prove the unsuitability of one *117 who seeks to be considered as the custodian of a dependent child.”
D.S.S. v. Clay County Dep’t of Human Res., 755 So.2d 584, 590-91 (Ala.Civ.App.1999) (emphasis added).
In this case, DHR attempted to investigate the maternal grandmother’s home, but she informed the social worker that she would not take the children. She expressed no interest in obtaining custody of the children until the eleventh hour before the termination hearing. The main, opinion concludes that because the maternal grandmother, at the hearing, professed an interest in the children, she should be considered a viable alternative to the termination of the parents’ parental rights. The trial court did not believe the grandmother was sincere in explaining her refusal to take the children, or, apparently, in testifying that she was, as of that date, in a position to, and was willing to, take care of the children.
Further, as the trial court noted in its judgment, at no time has this maternal grandmother chosen the best interests of the children over her own needs or desires. The trial court also found:
“[The maternal grandmother] is seemingly unaware of the need that children have for the security found in the same house setting with the same parental figure with consistent routines established. She has failed to provide that security for her own children, and she has exhibited a history of failing to provide that security for her grandchildren.”
(Emphasis added.) The maternal grandmother filed a motion to intervene only days before the termination hearing. Other than her testimony at that hearing, there is no evidence in the record to indicate that the maternal grandmother’s conduct up until a few days before the termination hearing was not a reliable indicator of her present willingness to take the children, or her probable future actions with regard to the children. DHR presented ample evidence to establish the grandmother’s consistent unwillingness, and, therefore, her unsuitability, to be considered a custodian of the children. See D.S.S. v. Clay County Dep’t of Human Res., supra. I conclude that that evidence supports the trial court’s judgment. This court reviews a trial court’s judgment terminating parental rights under an abuse-of-discretion standard. A.R.E. v. E.S.W., 702 So.2d 138, 139-40 (Ala.Civ.App.1997). I cannot agree that the trial court’s findings and judgment constituted an abuse of discretion. I would affirm the judgment of the trial court.
PITTMAN, J., concurs.